471 P.2d 157

Arliean Vickers **BARRETT** and George C. Barrett, Plaintiffs and Respondents,

v.

Leland H. **VICKERS**, Defendant and Respondent,

Sterling D. Vickers and Ethelyn Vickers, his wife, Defendants,

Joseph S. Barrett and Ethel V. Barrett, his wife, Defendants and Appellants.

No. 11787.

Supreme Court of Utah.

June 23, 1970.

Greenwood & Meservy, Salt Lake City, for appellants.

Quentin L. Alston, Salt Lake City, Everett E. Dahl, Midvale, for respondents.

CROCKETT, Chief Justice:

This is a controversy of ancient vintage among the four children (and their successors) of the late S. T. Vickers over the

property known as the Vickers Ranch east of Nephi, Utah. The facts concerning the vesting of a one-fourth interest in each of said children are set forth in an earlier decision.[1] The property remained in that status until in the year 1960, the district court had entered a decree stating that "it is inequitable and unfair to order a sale of the property."

Upon appeal this court ruled that the co-tenants were entitled as a matter of right to partition or to a sale of the property,[2] together with an accounting; and remanded for proceedings consistent with the opinion.[3] Pursuant thereto a trial was held in 1962, but the instant decision relating to the partition of the property and the accounting which is here appealed was not entered until June of 1969.

Defendant Joseph S. Barrett appeals, urging that the trial court erred (1) in failing to make an equitable partition of the land, and (2) in its accounting; and (3) also contends that the court's failure to render a decision for a period in excess of six years itself constitutes reversible error.

Of the four children, two sons and two daughters of S. T. Vickers, who were in the prior judgment declared each to be owner of a one-fourth interest in the ranch, only one now survives, Arliean Vickers Barrett, married to George Bar-

---

1. See Barrett v. Vickers, 100 Utah 534, 116 P.2d 772.

2. See Sec. 78-39-12, U.C.A.1953.

3. See Barrett v. Vickers, 12 Utah 2d 73, 362 P.2d 586.

rett; Leland Vickers, now deceased, is represented by Arliean as his administratrix; Sterling Vickers, now deceased, is represented by his wife Ethelyn Johnson (since remarried); Ethel Vickers Barrett, now deceased, is represented by her husband Joseph Barrett.

In attempting to work out a satisfactory division the trial court dealt with the entire property of approximately 230 acres in three separate categories; the "residence parcel," the "cultivated land" and the "uncultivated grazing land." He awarded to each quarter interest (child or successor), one fourth of the land designated as the "residential parcel," an amount fairly near one fourth of the "cultivated land" and a similar allocation of the uncultivated grazing land.

In regard to that partition of the property there are some pertinent observations: The first is that based on the prior adjudication of one-fourth interest each, the parties had worked out an arrangement among themselves for the use of separate portions of the "residential parcel" and the "cultivatable parcel" which the trial court used as the basis of his division of those parts of the property. The second is that the testimony of the parties in interest who testified indicated either approval or at least no serious disapproval of that division. Arliean Vickers Barrett so testified, and her husband, George Barrett's testimony was of similar import:

Q. Have you found personally, Mr. Barrett, that arrangement to be satisfactory to you?

A. Well, it pretty well filled the bill. I wasn't entirely satisfied, but I decided it would be better to go along with it until this thing was settled.

Ethelyn Vickers Johnson's feeling is shown by the following:

Q. Do you think it would be fair and equitable for the Court to divide the property now as it was divided then?

A. Well, I don't know. I don't care how they do it just so they leave me alone.

The appellant Joseph Barrett is the only one who squarely rejected the plan, but in spite of the long-standing impasse, he still offered *nothing constructive in its stead.* He testified:

Q. Mr. Barrett, do you have an opinion now as to whether or not this land can be divided between the four of you?

A. Well, I don't believe it can be divided. I think it is an injury, a five acre piece of irrigated land, * * * living 100 miles away, to come down here and farm a five acre piece of land. To me it is the most ridiculous thing I have heard tell.

Q. Why do you think it is ridiculous to divide it?

A. Because it costs so much money to come down and farm it. I can't come down here from Salt Lake for less than $10.

This type of objection as to a division of the property, coupled with failure to make any viable alternative suggestion, may provide some insight as to why the difficulty in arriving at a settlement with respect to this property has persisted so long. Without going into extended detail it can be said in summary: none of the parties or their counsel ever presented a plan for the sale or division of the property which was satisfactory to all; it appears that the trial court has given due consideration to the interests, the contentions and demands of the parties, and has arrived at what he regarded as a fair and equitable distribution among them.

 The answer to the appellants' attack on the findings and judgment is found in the traditional rules of review: that due to the trial court's prerogatives and advantaged position the presumptions favor his findings and judgment; that where there is dispute and disagreement in the evidence we assume that he believed those aspects of it and drew the inferences fairly to be derived therefrom which give them support; and if upon our survey of the evidence in that light, there is a reasonable basis to sustain them they will not be disturbed.[4] These same rules provide the answer to the complaints made about the claimed errors in the accounting between the parties. Whatever else may be said about the regrettably long delay in getting a decision, the delay in and of itself is not reversible error. The time to resort to other remedies which may have been sought to expedite the matter is now past. It is to be hoped that this controversy will now be laid to rest.

Affirmed. Appellants to bear costs on appeal.

CALLISTER, TUCKETT, and HENRIOD, JJ., concur.

ELLETT, J., concurs in the result.

4. See Winger v. Gem State Mutual of Utah, 22 Utah 2d 132, 449 P.2d 982.